**NOT FOR PUBLICATION**                                                    **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD ROSSI, on behalf of himself and all others similarly situated,<br><br>                       Plaintiffs,<br>vs.<br><br>THE PROCTOR & GAMBLE COMPANY,<br><br>                 Defendants. | Civil Action No. 11-7238 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge**.**

This Court granted preliminary approval to the proposed settlement of this class action lawsuit on February 21, 2013 ("Preliminary Approval Order"), and set forth a timeline pursuant to which Class Counsel and Defendant, the Proctor & Gamble Company ("P&G") (collectively, the "Settling Parties") could move for final approval of the "Settlement Agreement." (Docket Entry No. 69). Pursuant to that schedule, the Court conducted a fairness hearing on September 12, 2013. Now, having considered the briefs and declarations filed by the parties, including one objector, and the arguments raised at the aforesaid fairness hearing, the Court sets forth its findings below.


### I.      Background

By way of background, in December 2011, Plaintiff Edward Rossi filed a complaint in this Court, on behalf of himself and all others similarly situated, asserting claims of:  violation of

the Magnuson-Moss Warranty Act, breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment and violation of the New Jersey Consumer Fraud Act.

Paragraph 7 of Plaintiff's Complaint alleges that:

> Plaintiff Edward Rossi purchased Crest Sensitivity [toothpaste] ("CSTP") at a CVS store near his home in Bergen County, New Jersey. He chose to purchase Crest Sensitivity instead of a less expensive stannous fluoride toothpaste because only Crest Sensitivity promised "Relief Within Minutes." But that was a false promise. P&G's claims that this product is "New!" and that it provides "Relief Within Minutes" are false and unsubstantiated.

(Compl., ¶ 7).  This Court's jurisdiction is premised on federal question, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367.  The Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d).

The parties entered into a global settlement of the various class actions involving Crest Sensitivity Treatment & Protection Toothpaste in January 2013.    Under Federal Rule of Civil Procedure 23(e)(2), a court may only approve a class settlement after it has held a hearing and has determined that the settlement is "fair, reasonable, and adequate."

On February 21, 2013, this Court entered an order preliminarily approving the Settlement Agreement, approving the notice plan and conditionally certifying the class under Federal Rule of Civil Procedure 23(b) and (e).  A fairness hearing was held on September 12, 2013.

Now, having considered the arguments and briefs in support of and in opposition to the preliminarily-approved settlement, and having conducted the fairness hearing required by Fed. R. Civ. P. 23(e)(2), the Court issues this Opinion to address the issues of: (1) Class certification; (2) reasonableness of the settlement; and (3) reasonableness of the requested attorney fee award.

## II.     Class Certification

Prior to addressing the specifics of the settlement, the Court analyzes the class certification factors promulgated by Fed. R. Civ. P. 23.  Rule 23 has been held to permit classes certified only for settlement.  *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995).  In order to be certified, the class must meet all of the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.  *See* Fed. R. Civ. P. 23(a)(1-4); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).  It must also meet the additional requirements of Rule 23(b)(3): superiority and predominance.  *See* Fed. R. Civ. P. 23(b)(3); *Warfarin Sodium II*, 391 F.3d at 527.

### A.     Rule 23(a) Factors

#### 1.     Numerosity

Fed. R. Civ. P. 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  "The Third Circuit has generally held that the numerosity requirement is met if the proposed class exceeds 100 members."  *Welch v. Bd. of Dirs. of Wildwood Golf Club*, 146 F.R.D. 131, 135 (W.D. Pa. 1993).  Class Counsel and P&G estimate that the number of consumers that purchased CSTP – which was available nationwide – number in the hundreds of thousands and that therefore, hundreds of thousands of consumers are Class Members. Given the number and geographic distribution of the Class Members, the Court finds that joinder of all Class Members would be impracticable.

#### 2.     Commonality

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Baby Neal ex rel. Kanter v.*

*Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Warfarin Sodium II,* 391 F.3d at 527-28.  Here, the requirement is easily satisfied, as the claims of each Class member raise the common contention—capable of classwide resolution—that CSTP does not perform as promised by P&G in its advertisements and labeling.  Moreover, the proposed Class Members were exposed to the *same* challenged representations concerning CSTP located on the front and back of the product packaging.  Thus, all Class members share a common question of law and seek relief on the same nucleus of operative facts.

### 3.    Typicality

The typicality inquiry "assesses whether the named plaintiffs have incentives that align with those of absent class members so that the absentees' interest will be fairly represented." *Danvers Motor Co., Inc. v. Ford Motor Co*., 543 F.3d 141, 149-50 (3d Cir. 2008) (quoting *Georgine v. Amchem Prods., Inc*., 83 F.3d 610, 632 (3d Cir. 1996)).  Its purpose is to ensure that the interests of the class representatives do not diverge from those of the class as a whole.  *Baby Neal*, 43 F.3d at 57-58.   Typicality does not, however, require that all class members share identical claims. *See Johnston v. HBO Film Mgmt., Inc*., 265 F.3d 178, 184 (3d Cir. 2001); *see also Danvers,* 543 F.3d at 150 ("[F]actual differences will not defeat typicality if named plaintiffs' claims arise from same event or course of conduct that gives rise to claims of other class members and are based on same legal theory").

Here, the claims of the named Plaintiffs are typical of the Class claims because Rossi and the Class all assert claims based on the same statements in the advertising and marketing of CSTP.  In other words, they all base their claims on identical statements from the product packaging and on the same allegations concerning the toothpaste that led them to purchase

4

CSTP. Accordingly, they allege the same injury and are seeking corresponding damages. This factor is accordingly satisfied.

4.      **Adequacy**

In order to certify a class, a court must also find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy of representation inquiry has two components intended to assure that the absentees' interests are fully pursued: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995); *see In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997) ("There are two factors: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class.").

No objection has been lodged specifically as to the qualifications and capabilities of Class Counsel, and the Court is aware of Class Counsel's expertise in handling complex civil litigation. In fact, many of the firms handling this matter on behalf of the Class have appeared before this Court on other class action-related litigation, and the Court is satisfied that they are well-equipped to handle a case of this size and complexity.

With respect to the Class representatives, the Court finds that Plaintiff's interests are not antagonistic to those of other members of the Class. Like all members of the Class, Plaintiffs' claims arise out of representations made by Defendants about their products which were purchased by Plaintiff and others. The named Plaintiff has no interests that are antagonistic to or in conflict with the class he seeks to represent and his alleged injuries are identical to those

suffered by class members.  *See Johnston v. HBO Film Mgmt., Inc*., 265 F.3d 178, 185 (3d Cir. 2001) ("In analyzing this criteria, the court must determine whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class.").  Accordingly, both prongs of the adequacy inquiry are satisfied.  *See, e.g., In re Community Bank of Northern Virginia,* 622 F.3d 275, 292 (3d Cir. 2010).

### B.    Rule 23(b)(3) Factors

Next, pursuant to Rule 23(b)(3), a Court must find that the "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 266 (3d Cir. 2009) ("Whereas 'Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other,' the Rule 23(b)(3) predominance element 'requires that common issues predominate over issues affecting only individual class members.' ").  In this regard, the Third Circuit has held that:

> From our case law, we can distill at least three guideposts that direct the predominance inquiry: first, that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members; second, that variations in state law do not necessarily defeat predominance; and third, that concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class. We address each of these guideposts in turn.

*Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 297 (3d Cir. 2011).

Here, there are a number of questions common to the members of the Settlement Class, and all of the Class Members have been injured by the same wrongful course of conduct. The

common legal and factual questions are at the core of the litigation and are focused on the actions of P&G, not Plaintiffs.  The central common question that predominates is whether P&G breached its warranties and misled reasonable consumers into believing that CSTP would provide "Relief Within Minutes" and "Stop Tooth Pain, fast," and thereby charged a price premium for CSTP on the basis of that alleged misrepresentations. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 314 (3d Cir. 1998) ("[P]redominance is a test readily met in certain cases alleging consumer or securities fraud") (citation omitted); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005) (finding predominance requirement satisfied where "[a]ll plaintiffs' claims arise from the same alleged fraudulent scheme"). Nothing in the record indicates that individual issues would predominate at trial and no substantive objections have been raised in connection with the predominance requirement.

Additionally, Class Members' claims are, in contrast to the costs of litigation or even the risks of arbitration, *de minimis*; thus, the Court finds that maintaining individual actions in this case would be prohibitively expensive.   A class action is, therefore, the superior method of fairly adjudicating the controversy.   Thus, the Settlement Class satisfies the predominance and superiority requirements of Rule 23(b)(3).   Having met the requirements of Rules 23(a) and 23(b)(3), the Settlement Class is granted final certification.

## III.     Notice

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Action*s, 148 F.3d 283, 306 (3d

Cir. 1998).  Under Federal Rule of Civil Procedure 23(c), notice must be disseminated by "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974) (finding that Rule 23(c) includes an "unambiguous requirement" that "individual notice must be provided to those class members who are identifiable through reasonable effort").

Additionally, in this case, where a settlement class has been provisionally certified and a proposed settlement preliminarily approved, proper notice must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e).  Rule 23(c)(2)(B)-compliant notice must inform class members of: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the class member's right to retain an attorney; (5) the class member's right to exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997).

The Court begins by noting that no substantive objection has been filed by any Class Member as to the Notice Plan in this case.[1]  By way of background, Class Counsel explained at the September 12, 2013 Fairness Hearing that the Notice program here was designed in part to mirror the way that the product at issue was advertised.  In particular, Class Counsel noted that

---

[1] Although Objector Tim Blanchard states "I object to the inadequacy of the information available in the notice and settlement regarding attorneys' fees" (Docket Entry No. 77), the Court finds that such objection is more properly considered in the context of assessing Class Counsel's fee application.

this was not a product advertised in the media or on television; rather it was predominantly an internet promotional activity, and therefore, the Notice plan in this case was comprised of nationwide notice in two nationwide publications, and a substantial internet program that resulted in over 93,000 contacts. *See* Tr. (Sept. 12, 2013) at 17:21-18:5.

As detailed in the Declaration of Jonathan Carameros, there were three components to the Notice program: (1) A Summary Notice was published in the following publications: People Magazine on April 22, 2013 and USA Today on April 4, 2013, and 15 days of Internet Banner notifications were run from April 4, 2013 to April 18, 2013; (2) a toll-free telephone number (888-510-1707) dedicated to answering telephone inquiries from Class Members was established as of March 26, 2013; a total of 258 calls were received as of August 8, 2013; and (3) a website (www.SensitivityToothpasteSettlement.com) dedicated to this settlement was established as of March 26, 2013 (with a link directly from the Crest website) to provide additional information to the Class Members and to answer frequently asked questions; as of August 19, 2013, the website has received 93,491 visits.   Moreover, visitors of the website were able to download copies of Class Notice, Claim Form, Settlement Agreement and Preliminary Approval Order and were able to submit claims online and upload any supporting documentation.

Although this Court is mindful that "[a]ctual notice must be given to those whose identity could be ascertained with reasonable effort," there is no dispute in this case that there is no existing list of Class members to which mandatory individual notice could be mailed, nor has any party—or objector—even identified any way in which class members *could* be identified with reasonable effort.  *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 126 (3d Cir. 2012) ("Where names and addresses of members of the class are easily ascertainable . . . due process would dictate that the 'best notice practicable under the circumstances . . .' would be individual

notice."). To be clear, there has been **no** showing—or even suggestion—by any party or objector that any records kept by P&G contain the names and/or addresses of the universe of Class members in this case. In light of this reality, and given that the consumer product at issue was sold at a variety of locations throughout the country, the Court finds that the foregoing Notice program constituted the best practicable notice under the circumstances. The Notice program has informed the Class fully of their rights and benefits under the Settlement and all required points of information have been fully and clearly presented to the Class. Thus, the Court finds that Notice plan is adequate under Rule 23.

## IV.    Final Settlement Approval

Under Rule 23, a court may only approve a class settlement after it has held a hearing and determined that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Third Circuit has enumerated nine factors to be utilized in this determination:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Additionally, a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery was sufficient, the settlement proponents are experienced in similar matters, and there are few objectors. *See In re Warfarin Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

Finally, settlement of litigation is generally favored by courts, especially in the class action setting. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors*, 55 F.3d at 784; *see also In re Warfarin,* 391 F.3d at 535 (noting the "overriding public interest in settling class action litigation"). At the same time, the district court functions "as a fiduciary who must serve as a guardian of the rights of absent class members" by ensuring that the proposed settlement is fair, reasonable, and adequate. *In re General Motors,* 55 F.3d at 785.

Turning, therefore, to each of the *Girsh* factors, the Court finds as follows:

### A.    Complexity, Expense and Likely Duration of the Litigation

The first *Girsh* factor is whether the settlement avoids a lengthy, complex and expensive continuation of litigation. This factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233-34 (3d Cir. 2001) (internal quotation marks omitted). Here, the litigation has the potential to drag on for years, particularly given the factual and legal complexities involved in this case. *See* Marchese Decl. at ¶ 54. For example, Class Counsel represents that depositions of numerous P&G employees, and ex-employees, would be needed should the case proceed. In addition, Class Counsel would need to rely on consultants and experts, both in discovery and through trial. *See* Marchese Decl. at ¶ 54.

Additionally, the risks of substantial delay are significant. *See id.* at ¶¶ 52, 53, 55. There is no question that this case would take some time to bring to trial. Trial would likely involve extensive pretrial motions involving complex questions of law and fact, and the trial itself would likely be lengthy. *See Warfarin Sodium II*, 391 F.3d at 536 (finding the first *Girsh* factor to weigh in favor of settlement after three years of litigation). Even if Plaintiffs were ultimately

successful, P&G would undoubtedly appeal an adverse judgment, adding further time to a final resolution of this matter if it were fully litigated. *See* Marchese Decl. at ¶ 58. Importantly, of course, settlement also provides the Class with immediate and definite relief. This factor therefore weighs in favor of approval.

### B.       Reaction of the Class to the Settlement

This second *Girsh* factor gauges whether members of the class generally support or object to the settlement. In order to properly evaluate it, "the number and vociferousness of the objectors" must be examined. *In re General Motors*, 55 F.3d at 812. Generally, "silence constitutes tacit consent to the agreement." *Id.* (quotation omitted). Here, out of hundreds of thousands of Class members, there have been no requests for exclusions and only one (1) objection to the fairness of the proposed Settlement has been submitted. *See* Marchese Decl., ¶ 60. Thus, this settlement has strong class support. *See, e.g., Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (finding that objections by 29 members of a class comprised of 281 "strongly favors settlement"). The Court has considered the sole objection filed and, based on the reasons that follow, finds that it is not meritorious.

### 1.       Tim Blanchard

Tim Blanchard, proceeding *pro se,* filed an objection to the proposed Class Settlement on August 26, 2013. Mr. Blanchard states: "I generally object to the proponents of the settlement not sustaining their burden of proof on commonality, predominance, superiority and adequacy of class counsel and class representatives under FRCP Rule 23." (Docket Entry No. 77). Mr. Blanchard does not explain *how* or *why* he believes that Class Counsel has failed to sustain its burden of proof as to the Rule 23 requirements. Without providing reasons in support of his conclusory statement, this Court is not in a position to assess—in any meaningful way—the

12

merits of his argument.   In any event, the Court has already determined that the proposed Settlement meets each of the requirements of Rule 23(a) and (b)(3); Mr. Blanchard's conclusory objection to the contrary is therefore rejected.[2]

### C.   Stage of the Proceedings and Discovery Completed

Next, the Court considers the stage of the proceedings and the amount of discovery completed. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d at 813.

Although this case was indisputably in the early stages of discovery when the parties reached a settlement, the Court finds that Class Counsel conducted an extensive pre-suit investigation prior to filing this lawsuit, had the benefit of P&G's initial disclosures, reviewed substantive declarations from P&G employees regarding CSTP, and received P&G's responses to discovery requests. *See* Marchese Decl. at ¶¶ 18, 19, 30, 31, 35, 36.   In addition, Plaintiffs successfully opposed P&G's motion to dismiss in July 2012.  In light of the foregoing, the Court finds that Class Counsel engaged in a thorough investigation of the claims at issue and that both sides have sufficiently apprised themselves of the relevant facts and law to make a knowledgeable decision as to settlement. *See* Marchese Decl. at ¶¶ 18, 19, 30, 31, 35, 36.  This factor weighs in favor of approval.

---

[2] Class Counsel also maintain that Mr. Blanchard is a "serial objector," and thus, his objection should be viewed with caution. *See, e.g., In re Checking Account Overdraft Litig*., No. 09-md-02036-JLK, Dkt. No. 1885-7 (S.D. Fla. Sept. 16, 2011) ("[P]rofessional objectors . . . bring objections, typically of a generic sort, that are lodged primarily for the purposes of delay and to extract (indeed, often, to extort) payment to the objector's counsel to go away").  Although Class Counsel's point is well taken, because Mr. Blanchard offers merely a boilerplate objection with no substance, such objection is, in any event, rejected on the merits.

### D.      Risks of Establishing Liability

The risks of proceeding to trial in any case are always considerable.  *See In re Prudential,* 962 F. Supp. at 539.   This case is no different.   Class Counsel has outlined several risks to establishing liability and damages, including: denial of class certification or the granting of summary judgment in favor of Defendant.   In that scenario, the Class recovery would be zero. Moreover, Defendant has zealously defended against these claims, and would surely continue to do so if the case proceeds to trial.   Given such risks, and noting the inherent difficulty associated with litigating and proving this case at trial, the Court agrees that this *Girsh* factor weighs in favor of approval.

### E.      Risks of Establishing Damages

This factor is intertwined with the previous one.  Moreover, if the case were to proceed to trial, individual Class members could have difficulty establishing that they were damaged and to what extent.  *See* Marchese Decl. at ¶¶ 55, 57, 58.  Thus, this factor weighs in favor of approval.

### F.      Risks of Maintaining the Class Action Through Trial

Plaintiffs run the risk that the Court would not find this action suitable for certification or not find it suitable for litigation on a multi-state basis.  Even if class certification were granted, Plaintiffs face the added challenge of maintaining class certification through trial.  *See, e.g., Eggleston v. Chicago Journeymen Plumbers Local Union No. 130 U.A.,* 657 F.2d 890, 896 (7th Cir. 1981) ("After all, a favorable class determination by the court is not cast in stone.").  This factor weighs in favor of approval.

14

### G.    Ability of Defendant to Withstand A Greater Judgment

There is no dispute that P&G has "ample resources." (Class Counsel Br. at 24).  Nor has P&G provided any indication that it would be unable to withstand a greater judgment in this matter.  Thus, this factor weighs against settlement.

### H.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all the Attendant Risks of Litigation

Combining the final two *Girsh* factors, the analysis here compares the reasonableness of the settlement against the risks of litigation and the best possible Class recovery.  As indicated earlier, a jury could very well find in favor of the Class, but it also could find that each individual Class Member failed to prove a separate entitlement to damages. Ultimately, it is difficult to predict the best possible recovery for this Class.  That being said, the Settlement here provides immediate and substantial cash benefits to the Class. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006). "Rather, the percentage recovery must represent a material percentage recovery to [the] plaintiff in light of all the risks considered under *Girsh*." *Id.*

Having evaluated the proposed settlement against the nine *Girsh* factors and against the dictates of Rules 23(b)(3), 23(c), and 23(e), the Court finds that it warrants approval.  The absence of any meaningful objections, combined with the size of the class recovery, the sound notice program, and the real risks associated with taking this matter to trial all indicate that the Settlement ought to be approved.  The Court therefore grants the motion for final approval of the settlement reached in this matter.

V.      **Attorneys' Fees, Incentive Award and Expenses**

A.      **Attorneys' Fees**

Next, Class Counsel moves for an award of attorneys' fees.  In particular, P&G has agreed to pay Class Counsel up to $700,000 in attorneys' fees and expenses *in addition to* any benefits to be paid to the Class.  This award of attorneys' fees and costs is completely separate and apart from the Class Settlement and the relief to the Class will not be reduced as a result of these payments.  Furthermore, Class Counsel represents that attorneys' fees were not negotiated or even discussed until after agreement was reached between the parties on all other terms of the settlement. *See* Marchese Decl. at ¶¶ 43, 61; Cecchi Decl. at ¶¶ 16-18.  To date, only one objection has been filed with respect to Class Counsel's fee application.

The Court begins its analysis by noting that the awarding of fees is within the district court's discretion. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001). The Federal Rules of Civil Procedure expressly authorize that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  The standard for evaluating fee awards is reasonableness. *Id*. at 433.

As previously stated, the attorneys' fees that Class Counsel seeks in this case will not be awarded from a "common fund" created for the class as a whole.  Thus, regardless of the amount that Class Counsel receives, every class member who submitted a valid claim form will receive either the purchase price actually paid or $4.00.  *See* "Notice of Class Action Settlement," Docket Entry No. 66-2.

16

This case is therefore different from other class action settlements where the incentives of the class members and the attorneys could arguably diverge on the issue of attorneys' fees. If money paid to the attorneys comes from a common fund, and is therefore money taken from the class, then the Court must carefully review the award to protect the interests of the absent class members. *See, e.g., In re Rite Aid Corp. Secs. Litig.,* 396 F.3d 294, 301 (3d Cir. 2005) (articulating seven factors a district court should consider when analyzing a fee award in a common fund case and noting that "notwithstanding our deferential standard of review of fee determinations, we have required district courts to clearly set forth their reasoning for fee awards so that we will have a sufficient basis to review for abuse of discretion."). If, on the other hand, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no potential conflict of interest between attorneys and class members. *See, e.g., McBean v. City of New York,* 233 F.R.D. 377, 392 (S.D.N.Y. 2006).

In this regard, courts routinely approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount is independent of the benefit obtained for the class. *See, e.g., In re LG/Zenith Rear Projection Television Class Action Litig.,* No. 06-5609 (JLL), 2009 WL 455513, at *8-9 (D.N.J. Feb. 18, 2009) (approving agreed upon attorneys' fee award that did not diminish the settlement fund); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 1652303, at *4 (D.N.J. June 5, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009) (same); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 106 F. Supp. 2d 721, 732 (D.N.J. 2000) (finding it significant that attorneys' fees would not diminish settlement fund); *McBean,* 233 F.R.D. at 392 (granting class counsel full amount of fees agreed to by

defendant where the attorneys' fees were separate from the class settlement and did not diminish the class settlement).

Having carefully considered Class Counsel's fee application, the Court finds that the agreed-upon attorneys' fees are reasonable.  While the Court is not bound by the agreement between the parties, the fact that the award was the product of arm's-length negotiations weighs strongly in favor of approval.  Moreover, the benefit of a fee negotiated by the parties at arm's-length is that it is essentially a market-set price—P&G has an interest in minimizing the fee and Class Counsel have an interest in maximizing the fee to compensate themselves for their work and assumption of risk.  *See, e.g., In re AXA Fin., Inc.*, No. 18268, 2002 WL 1283674, at *7 (Del. Ch. May 22, 2002) ("Where, as here, the fee is negotiated after the parties have reached an agreement in principle on settlement terms and is paid in addition to the benefit to be realized by the class, this court will also give weight to the agreement reached by the parties in relation to fees.").

### 1.   *Lodestar Cross-Check*

The Court of Appeals for the Third Circuit has expressly stated that counsel's lodestar is to be used as a "cross-check" on any requested percentage fee award. *Cendant II*, 264 F.3d at 256.  The lodestar multiplier is calculated by dividing the attorneys' fees that Class Counsel seeks by Class Counsel's associated lodestar.  *See, e.g., Cullen v. Whitman Med. Corp*., 197 F.R.D. 136 n.6 (E.D. Pa. 2000).  Although the proposed fee award in this case is not a portion of a common fund, a lodestar cross-check nevertheless demonstrates the reasonableness of Class Counsel's requested fee.

Class Counsel and their staff have spent more than 952 hours on this case, as reflected

in the Declarations attached to Class Counsel's brief in support of final approval.  *See* Marchese Decl. at ¶¶ 29-39, 69, 71-72; Vozzolo Decl. at ¶¶ 9, 10; Cecchi Decl. at ¶¶ 6-9, 11.  Such tasks include: investigation of the case and claims; preparing the complaint; briefing the opposition to Defendant's motion to dismiss; extensive and lengthy settlement discussions; documenting the Settlement; documenting and implementing the Settlement Class notice plan; and litigating the approval of the Settlement.  *See* Marchese Decl. at ¶¶ 8, 29-39; Vozzolo Decl. at ¶¶ 5, 15; Cecchi Decl. at Exhibit A.[3]

The rates for each individual attorney and paralegal are set forth in the Declarations and in the charts and exhibits to the Declarations. *See* Marchese Decl. at ¶ 71; Vozzolo Decl. at ¶ 10; Cecchi Decl. at ¶¶ 9, 10.  The hourly rates vary appropriately between attorneys and between paralegals, depending on the position, experience level, and locale of the particular attorney.  *Id.* Having reviewed the foregoing declarations and corresponding exhibits—all of which are properly organized and well-documented—the Court finds that the lodestar rates are based on a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided and the experience of the lawyer.  *See Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n. 1 (3d Cir. 2000).

Taking into account the several factors discussed above, including the economic benefits of the Settlement, the complexity and risk of the litigation, and the skill and experience of counsel, Class Counsel's rates are reasonable in this case. As set forth in the Declarations attached to Class Counsel's brief, this calculation yields a lodestar based solely on the time for

---

[3] In addition, Class Counsel represents that several other highly regarded class action firms including, among others, Bonnett Fairbourn Friedman & Balint, P.C., Complex Litigation Group LLC, Heins, Mills & Olson, P.L.C., Seeger Weiss LLP, and Strauss & Troy, which are all comprised of skilled and experienced attorneys, committed time towards this litigation, but their time has not been included in this submission. *See* Class Counsel's Br. at 31.

Class Counsel, before application of a reasonable multiplier, of $511,890.25. *See* Marchese

Decl., ¶ 63. This results in a multiplier of 1.34. *Id.,* ¶ 64. The Third Circuit has noted that

"[m]ultiples ranging from one to four are frequently awarded in common fund cases where the

lodestar method is applied." *In re Prudential*, 148 F.3d at 341. In fact, in *Cendant PRIDES*, the

Third Circuit approved a lodestar multiplier of 2.99 in a case it described as "relatively simple in

terms of proof" in which "discovery was virtually nonexistent." *Cendant PRIDES*, 243 F.3d at

735-36; *see also AT&T,* 455 F.3d at 173 (discussing the reasonableness of the Cendant PRIDES

multiplier). A multiplier of 1.34, as is the case here, is therefore quite reasonable for a lodestar.

2.   *Objections*

Tim Blanchard objects to Class Counsel's fee application on the following ground:

> Objection is made to attorneys' fees on basis of a lodestar or a
> percentage of recovery analysis. Further objection is made to the
> extent of the failure of class counsel to make a detailed attorneys'
> fee and expense application within a reasonable and adequate
> amount of time for objectors to evaluate the fee and expense
> application. In the Class Action Settlement Agreement found on
> the settlement website, the parties state that class counsel will be
> awarded up to $700,000 in fees. There is no basis from which to
> assess the fairness of these fees. I object to the inadequacy of the
> information available in the notice and the settlement regarding
> attorneys' fees. Per the Preliminary Approval class counsel was
> supposed to have made an application for attorneys' fees on August
> 9, 2013, but had that date extended to August 20, 2013. This was
> not enough time for the class to assessment the information that
> was to be provided about the attorneys' fees.

(Docket Entry No. 77). To the extent Mr. Blanchard challenges the calculation of attorneys' fees

"on the basis of a lodestar or a percentage of recovery analysis," such statement is entirely

conclusory and does not warrant further discussion. In any event, the Court has conducted its

own analysis, as set forth above, and finds that Class Counsel's fee application is well supported,

20

adequately documented, and that the resulting multiplier of 1.34, as is the case here, is indisputably a reasonable lodestar.

To the extent Mr. Blanchard takes issue with the amount of time objectors had to evaluate the fee and expense application, the Court finds that information concerning the request for an award of attorneys' fees and reimbursement was provided in the Class Action Settlement Agreement, which was available on the dedicated Settlement website for months and discussed (and included) in the papers submitted in support of Preliminary Approval in January 2013. *See* Settlement Agreement, Docket Entry No. 66, Ex. 1 at page 21 ¶47 ("The payment by P&G of attorneys' fees and expenses is separate from and in addition to the relief afforded the Settlement Class Members in this Agreement. The Court's award of any fees and expenses shall be separate from its determination of whether to approve this Agreement."). In addition, the Frequently Asked Questions section of the Settlement website explains:

> 9. How Will Class Counsel Be Paid?
> In addition to payments made to the Settlement Class members, Procter & Gamble has agreed to attorneys' fees and costs, to be paid to Class Counsel of $700,000 subject to approval by the Court.

*See*     http://www.sensitivitytoothpastesettlement.com/content.aspx?c=5422&sh=1.     This information was available to Mr. Blanchard and all the Class Members long before the Plaintiffs' final approval papers were filed on August 20, 2013.

Moreover, at the Fairness Hearing, Class Counsel represented to the Court that he reached out to Mr. Blanchard directly, after receiving notice of his objection, and offered to give Mr. Blanchard more time to supplement his objection as to the attorneys' fees application. *See* Tr. (Sept. 12, 2013) at 16:6-11. Class Counsel represents that they received no response from Mr. Blanchard. *Id.*

In light of the foregoing, the Court finds Mr. Blanchard's objection as to the attorneys' fee application to be meritless.  By contrast, evidence in the record confirms that the agreed amount of attorneys' fees was negotiated by sophisticated counsel familiar with complex and class action litigation.  The award of fees and costs requested in this case was agreed to by all parties and, notably, does not diminish the Settlement Class relief.  *See* Marchese Decl. at ¶ 61.

### 3.   Conclusion as to Fee Award

Although the proposed fee award was set before either side knew the total number of hours that would eventually be worked by Class Counsel, or the total amount of money that would eventually be paid to the Class, based on the reasons set forth above, the Court concludes that consideration of the agreed-upon fee award at this point in time, with full knowledge of both the hours worked and the Class recovery, supports its reasonableness.

### B.   Expenses

Class Counsel also requests $12,964.98 in out-of-pocket litigation expenses.  Such expenses, which would be reimbursed directly by P&G as part of the negotiated $700,000, are comprised of costs relating to court fees, travel, photocopying, phone, fax, postage, legal research and other legal services.  *See* Marchese Decl. at ¶ 70, Exhibit B; Vozzolo Decl. at ¶ 13, Exhibit C; Cecchi Decl. at ¶ 12.  Notably, such expenses would not diminish the Settlement Class relief.

Expenses are recovered if they are adequately documented and reasonable in nature.  *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.") (citing *Abrams v.*

*Lightolier*, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995)).  Courts have generally approved expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of consultants.  *See, e.g., Abrams*, 50 F.3d at 1225; *Cullen*, 197 F.R.D. at 151.

The Court has carefully reviewed the certifications submitted by the numerous attorneys in support of Class Counsel's request for reimbursement of expenses and finds that each adequately sets forth the specific types and/or categories of out-of-pocket costs comprising the total expenses requested.  Accordingly, Class Counsel's request for reimbursement of out-of-pocket litigation expenses in the amount of $12,964.98 is approved.

### C.    Incentive Awards

Class Counsel also requests that the Court approve the payment of incentive awards for the named Plaintiffs in the amount of $1,500 each.  Given the duration of the litigation and the extent of their personal participation, the Court finds that the named Plaintiffs are entitled to compensation above and beyond their recoveries under the Settlement Agreement. As previously discussed, the named Plaintiffs to this action agreed to pursue the claims at issue for the benefit of the entire Class.  The distribution of the incentive award reflects the named Plaintiffs' involvement in the prosecution of the case and in discovery.  Therefore, in accordance with Section IX, Paragraph 49 of the Settlement Agreement, the Court approves incentive awards in the amount of $1,500 for each of the named Plaintiffs to be paid by P&G.

### VI.   Conclusion

For the reasons set forth above, the Court finds that the Settlement in this matter is fair, reasonable, and adequate and provides a significant recovery to the Class.  Additionally, the

request for attorneys' fees in the amount of $700,000.00 is approved, as is Class Counsel's request for reimbursement of out-of-pocket litigation expenses in the amount of $12,964.98, and Class Counsel's request for incentive awards for each of the named Plaintiffs in the amount of $1,500.00.

The parties' motion for final approval of the Class Settlement [Docket Entry No. 76] is **granted**.  An appropriate Order accompanies this Opinion.


<u>s/ Jose L. Linares</u>
JOSE L. LINARES
U.S. DISTRICT JUDGE

Dated: October 3, 2013