# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EDWARD ROSSI on behalf of himself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>vs.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>                                    Defendant. | Civil Action No. 11-7238 (JLL)(MAH) |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO IMPOSE AN APPEAL BOND

---

James E. Cecchi
Caroline F. Bartlett
Donald A. Ecklund
CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068-1739
(973) 994-1700

Scott A. Bursor
Joseph I. Marchese
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
(646) 837-7150

Antonio Vozzolo
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 983-9330

*Attorneys for Plaintiff Edward Rossi and the Class*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .................................................................................................................. 6

    A.  Requiring the Objector to Post an Appeal Bond as a Condition to
         Prosecuting His Appeal Is Appropriate ........................................................ 8

    B.  A Bond of $30,000 is Necessary to Cover the Costs of the Appeal ............................ 11

CONCLUSION ............................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Adsani v. Miller,*
   139 F.3d 67 (2d Cir. 1998) ........................................................................................8, 11

*Allapattah Servs., Inc. v. Exxon Corp.,*
   No. 91-0986 CIV, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ......................................7, 9

*Bobowski v. Clearwire Corp.,*
   Case No. 10-cv-1859 (W.D. Wa) ECF No. 166 ...................................................................3

*Chambers v. NASCO,*
   501 U.S. 32 (1991) ..............................................................................................................1

*City P'Ship Co. v. Atlantic Acquisition Ltd. P'Ship,*
   100 F.3d 1041 (1st Cir. 1996) .............................................................................................4

*Devlin v. Scardelletti,*
   536 U.S. 1 (2002) (Scalia, J., dissenting) ...........................................................................8

*Dewey v. Volkswagen AG,*
   681 F.3d 170 (3d Cir. 2012) ..............................................................................................12

*Dewey v. Volkswagen AG,*
   No. 07-cv-2249-FSH-PS (D.N.J.), ECF No. 268 ..............................................................13

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975) ................................................................................................5

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,*
   695 F. Supp. 2d 157 (E.D. Pa. 2010) ..............................................................................8, 11

*In re Cardizem CD Antitrust Litig.,*
   391 F.3d 812 (6th Cir. 2004) ...........................................................................................7, 12

*In re Cardizem CD Antitrust Litig.,*
   No. 99-md-1278, Corrected Order No, 82 (E.D. Mich. Dec. 18, 2003), *aff'd*, 391 F.3d
   812 (6th Cir. 2004) ..............................................................................................................9

*In re Cendant Corp. Litig.,*
   264 F.3d 201 (3d Cir. 2001) ................................................................................................5

*In re Checking Account Overdraft Litig.,*
   No. 1.09-MD-02036 JLK, 2012 WL 456691 (S.D. Fla. Feb. 14, 2012) ...........................12

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003).....................................9, 10, 12

*In re Diet Drugs Products Liab. Litig.*,
MDL No. 1203, 2000 WL 1665134 (E.D. Pa. Nov. 6, 2000)......................................8, 11

*In re Hydroxycut Marketing & Sales Practices Litig.*,
Case No. 09-md-2087-BTM-CAB (S.D. Cal) .........................................................3, 4

*In re Initial Public Offering Sec. Litig.*,
728 F. Supp. 2d 289 (S.D.N.Y. 2010).....................................................................5

*In re Ins. Brokerage Antitrust Litig.*,
Civ. No. 04-5184 (GEB), 2007 WL 1963063 (D.N.J. July 2, 2007).........................8, 9, 11

*In re MagSafe Apple Power Adapter Litig.*,
No. C 09-01911 JW, 2012 WL 2339721 (N.D. Cal. May 29, 2012).................................7

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
520 F. Supp. 2d 274 (D. Mass. 2007) ................................................................6, 12

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*,
No. 11-MD-2247 ADM/JJK, 2012 WL 3984542 (D. Minn. Sept. 11, 2012) ...................11

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513 (D. Nev. Mar. 8, 2010) .................6, 11, 12

*In re Nutella Marketing & Sales Practices Litig.*,
Case No. 11-cv-1086 (FLW) (D.N.J.) ECF No. 122 .................................................3

*Larson v. AT&T Mobility LLC*,
687 F.3d 109 (3d Cir. 2012) ...........................................................................13

*Maher v. Hyde*,
272 F.3d 83 (1st Cir. 2001) ..............................................................................9

*Marek v. Chesny*,
473 U.S. 1 (1985) .........................................................................................11

*Miletak v. Allstate Ins. Co.*,
No. C 06-03778 JW, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012)..............................11

*O'Keefe v. Mercedes-Benz United States, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003) .........................................................................6

*O'Keefe v. Mercedes-Benz USA, LLC*,
No. Civ. A. 01-CV-2902, 2003 WL 22097451 (E.D. Pa. June 4, 2003) ...........................10

*Pedraza v. United Guar. Corp.*,
    313 F.3d 1323 (11th Cir. 2002) ...................................................................................... 8

*Sampang v. AT & T Mobility LLC*,
    No. 07cv5325-JLL (D.N.J.), ECF No. 461 .................................................................. 13

*Sckolnick v. Harlow*,
    820 F.2d 13 (1st Cir. 1987) .................................................................................. 10, 11

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000) ............................................................................. 6

*Torrisi v. Tuscon Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .......................................................................................... 6

*Venen v. Sweet*,
    758 F.2d 117 (3d Cir. 1985) .......................................................................................... 8

*Willhauk v. Halpin*,
    953 F.2d 689 (1st Cir. 1991) ......................................................................................... 4

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Fed. R. App. P. 7 ................................................................................................... 1, 8, 13

Fed. R. App. P. 38 ............................................................................................... 9, 10, 11

Fed. R. App. P. 39 ..................................................................................................... 9, 11

Plaintiff Edward Rossi and Class Counsel move for the entry of an Appeal Bond in the amount of $30,000 under Federal Rule of Appellate Procedure 7. Such a bond is appropriate under established case law to discourage frivolous objections. *See Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991) (finding that trial courts always have inherent powers to assess fees and costs when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (citation omitted). The objection lodged by Timothy Blanchard against the Settlement is frivolous and will serve no purpose but to delay the distribution of benefits to a Class that will gain nothing from the appeal.

## **PRELIMINARY STATEMENT**

This matter arises from the frivolous appeal of a sole, serial objector to the nationwide settlement of a consumer class action case that resolved warranty and consumer protection claims concerning the alleged false and misleading product representations and advertising statements used to sell Crest Sensitivity Treatment & Protection Toothpaste. The settlement also resolved similar consumer class action cases filed in the United States District Courts for the Northern District of California, Northern District of Ohio, Southern District of Ohio, and in the Superior Court of the State of California.

On February 22, 2013, this Court granted preliminary approval to the nationwide settlement of this consumer action matter (the "Settlement") pursuant to Fed. R. Civ. P. 23. *See* Dkt. 69. After distribution of notice to the settlement class, the Court received only one objection to the Settlement from Timothy Blanchard, a purportedly *pro se* objector who in fact was working with counsel. On September 12, 2013, the Court held a fairness hearing at which counsel for the Class personally appeared and counsel for the defendant appeared telephonically. Both parties presented argument in support of the Settlement. Neither Mr. Blanchard nor his counsel, Mr. Christopher Bandas, appeared. After thoroughly addressing the parties' arguments and with a full appreciation of the objection, the Court granted the Settlement final approval and entered final judgment on

October 3, 2013.  *See* Dkt. 80 and 81.  Now, the sole objector (who did not appear at the hearing) has filed a notice of appeal.

Mr. Blanchard and Mr. Bandas, both professional objectors, have used the judicial system to pursue their own improper interests while holding hostage settlement relief to which Class Members are entitled.  They have made misrepresentations to this Court and to the Third Circuit Court of Appeals, and have filed both a claim form pursuant to the Settlement as well as a "conclusory" and "meritless" objection to the Settlement in this case.  Indeed, they misrepresented to the District Court and the Third Circuit Court of Appeals that the "objection" was filed by Mr. Blanchard as a *pro se* litigant prior to the filing of Mr. Bandas' notice of appearance in the appellate court.  But this was false.  As the initial Notice of Appeal reveals, the return address for the mailing envelope was Mr. Bandas's law firm, and the receipt for the filing fee indicates that Mr. Bandas' firm paid.  Yet, Mr. Bandas, a Texas attorney who has not appeared in this case and is not admitted to the Bar of New Jersey or to this Court, elected to secret himself initially.  Mr. Bandas ghostwrote the initial appeal, and clandestinely orchestrated Mr. Blanchard's initial objection thereby engaging in the unauthorized practice of law and violating his ethical duty of candor to the Court.  Moreover, instead of filing as a represented party or conducting himself as a true *pro se* litigant, Mr. Blanchard permitted Mr. Bandas to deceptively use him as a shield so they could together attempt to extort payment from Class Counsel and/or the Defendant on appeal of this Settlement.  Messrs. Blanchard and Bandas are holding up this Settlement for the Class solely for purposes of delay and to extract a payment.  And they have pinned their hopes on entirely meritless grounds.

Turning to the merits (or lack thereof) of the appeal, the appellant has not come forward with a single argument capable of persuading the Third Circuit Court of Appeals to disturb this Court's well-reasoned approval of the parties' Settlement.  Mr. Blanchard simply filed a rote

objection repeating the same boilerplate arguments that he and Mr. Bandas raise time and time again in courts across the country – none of which comes close to providing a basis to support an appeal. The Court found that the Blanchard-Bandas objection was "entirely conclusory," "meritless," and failed to "explain how or why [appellant] believes that Class Counsel has failed to sustain its burden of proof as the Rule 23 requirements."  Dkt. 80 at 12, 20, 22.  The Court further concluded that the submission was a "boilerplate objection with no substance" and therefore rejected it "on the merits."  *Id.* at 13.  Moreover, despite the hopelessly inadequate nature of the objection, Class Counsel tried to reach out to Mr. Blanchard several times (by phone and by e-mail) to discuss his contentions, but Mr. Blanchard never responded to Class Counsel's invitations to confer.  *See id.* at 21.

     The filing of the frivolous notice of appeal is made more egregious because these activities bear a striking resemblance to the misconduct of both Mr. Blanchard and Mr. Bandas that the Honorable Barry T. Moskowitz, U.S.D.J. has examined closely in *In re Hydroxycut Marketing &Sales Practices Litig.,* Case No. 09-md-2087-BTM-CAB (S.D. Cal.).  That they would engage in the same conduct here while being excoriated in California is both mystifying and deeply troubling. Unfortunately, this is not the first district court judge to scrutinize the conduct of Mr. Bandas. *Bobowski v. Clearwire Corp.*, Case No. 10-cv-1859 (W.D. Wa) ECF No. 166 (revoking authorization to practice in the Western District of Washington).  Indeed, Mr. Bandas has previously ignored the rules and orders entered within the Third Circuit. *See, e.g., In re Nutella Marketing & Sales Practices Litig.*, Case No. 11-cv-1086 (FLW) (D.N.J.) ECF No. 122 (ignoring order requiring the payment of an appeal bond in appeal of a settlement of a class action).  Now, after ignoring prior admonitions, orders, and the rules governing practice in the federal courts, they are again engaging in their familiar illicit practices here.  There is no non-frivolous legal argument and no possible evidentiary support for this objectively unreasonable use of the appellate courts.

But prevailing on appeal is not the appellant's goal here.  Instead, the intended goal of the appeal is to extract a payment in exchange for desisting.  This type of opportunism is – unfortunately – not unusual for these serial objectors who file objections and initiate appeals because they realize that, by increasing costs by delays and litigation expenses, they may be able to extract a payment.  In fact, Mr. Bandas recently admitted that he has a complete disregard for the judicial process and the courts; does not "care about changing the settlement agreement one word, one letter, or anything," *In re Hydroxycut Marketing & Sales Practices Litig.,* Case No. 09-md-2087-BTM-CAB (S.D. Cal) Tr. dated June 20, 2013 at 21; and would "resolve both his client's and [another serial objector's] objections for $400,000" or "hold up [a settlement] for two to three years."  *In re Hydroxycut Marketing & Sales Practices Litig.,* Case No. 09-md-2087-BTM-CAB (S.D. Cal.) Tr. dated June 20, 2013 at 21-24 and Tr. dated July 16, 2013 at 85-89.  Messrs. Blanchard and Bandas are apparently unwilling to do the right thing on their own volition by following the rules, abiding by court orders, or withdrawing a frivolous appeal.

Under Rule 23(e), a district court has broad discretion to determine whether a class action settlement is fair, adequate, and reasonable, based on the law, facts and circumstances of the case.  Moreover, it is well-established that the standard for appellate review of the Court's final approval of a settlement is abuse of discretion.  *See City P'Ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996) ("Upon review, our role, 'is not to decide whose assertions are correct, but merely to ascertain whether the district court clearly abused its discretion in approving the settlement.' . . . Great deference is given to the trial court. 'It is only when one side is so obviously correct in its assertions of law and fact that it would be clearly unreasonable to require it to compromise to the extent of the settlement, that to approve the settlement would be an abuse of discretion.'") (internal citations omitted); *see also Willhauk v. Halpin*, 953 F.2d 689, 700 (1st Cir. 1991) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived. . . .  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work. . . .  Judges are not expected to be mindreaders.  Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly, or else forever hold [her] peace.'")   In order to prevail on appeal, Messrs. Blanchard and Bandas will have to demonstrate that this Court's approval of the Settlement amounted to an abuse of discretion.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).  In a lengthy opinion, the Court certified the class for settlement purposes, undertaking a detailed analysis of the factors under Rules 23(a) and (b)(3), and found the Settlement to be fair, reasonable, and adequate under Rule 23(e), taking into consideration each of the factors enumerated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  The Court also found notice of the Settlement to be adequate.  Given this Court's scrutiny of the Settlement and the objection, it is inconceivable that Messrs. Blanchard and Bandas will be able to meet their burden on appeal to demonstrate that this Court abused its discretion in approving the Settlement or in granting the attorneys' fees awarded.

The appeal, which lacks any legitimate basis, can only be viewed as yet another attempt to delay payment to the thousands of class members who will obtain a recovery and to hijack a settlement in an effort to extract a fee from Class Counsel or the defendant in exchange for dismissing his appeal.  *See In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 n. 37 (S.D.N.Y. 2010) ("Federal courts are increasingly weary of professional objectors . . . [with] objections [that] were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests."  (internal quotation marks omitted)).  For the reasons set forth below, Movants request that this Court require the Objector-Appellant to post a bond in order to continue prosecuting his appeal of this Court's final judgment approving the Settlement.  Plaintiff and Class Counsel respectfully request that the bond be set at $30,000.

## ARGUMENT

***Not one*** Class member has anything to gain by Objector's successful appeal.   Given Objector's clear motivation in filing his objection, he must be regarded as a "spoiler" most concerned with exercising leverage to prevent others from benefiting from the settlement.   *Cf. Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) (characterizing objectors as "spoilers" when only twenty of 113,000 class members objected and only two appealed the settlement's approval).   He now compounds the abuse by taking an appeal, which will delay distribution of settlement proceeds to thousands of consumers, notwithstanding this Court's exercise of discretion well within the bounds of applicable authority.

The objection must be regarded as "generic unhelpful protests" lodged by "professional objectors."   *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) ("some of the objections were obviously 'canned' objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests").   However, "[f]ederal courts are increasingly weary of professional objectors."   *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).

Courts have imposed bonding requirements on appealing objectors when it is clear from the outset that the proposed appeal lacks merit in recognition of the fact that plaintiffs will incur significant expense in opposing these frivolous objections.   *See, e.g., In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) ("The Court further finds that the four Objectors should be required to file an appeal bond sufficient to secure and ensure payment of costs on appeals which in the judgment of this Court are without merit and will almost certainly be rejected by the Ninth Circuit Court of Appeal."); *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) ("[T]he class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous

objectors from threatening to hold up class distributions."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986 CIV, 2006 WL 1132371, at *16 (S.D. Fla. Apr. 7, 2006) ("The inconsistency of [the objector's] arguments renders them irretrievably flawed and reveals that the Objections filed by [the objector] are both frivolous and unhelpful to the resolutions of the issues in this case."); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004) ("[W]hile the district court may have overstated the weakness of the substantive objections raised by the [appealing objector] when it assessed them as 'bordering on the frivolous,' we agree they lack merit.").

Still, defending an appeal, even a frivolous one, is both time-consuming and expensive. Indeed, the pendency of this appeal will obligate Class Counsel to spend considerable additional time and money. What is most important, distribution of the settlement proceeds to Class members will be delayed for months, if not years, by this appeal. Consequently, it is appropriate to require the Objector to post an appeal bond to secure at least a portion of the costs of the appeal. The reasonableness of Plaintiff's request is further underscored by the fact that the Objector and his counsel are professional objectors who are not found within this Circuit and with a history of ignoring prior orders requiring the posting of an appeal bond, making the risk of non-payment significant. As such, Class Counsel and Defendant would be required to institute collection actions to recover the costs incurred during appeal. Accordingly, there is a real risk of non-payment. *See In re MagSafe Apple Power Adapter Litig.*, No. C 09-01911 JW, 2012 WL 2339721, at *2 (N.D. Cal. May 29, 2012) ("because Objectors are highly unlikely to prevail in their appeals, and because there is a significant risk of non-payment following appeal [where the objectors were outside the jurisdiction of the court of appeals], the Court finds that a bond is warranted.").

In light of this Court's thorough consideration of the objection and the deferential abuse of discretion standard governing these appeals, it is clear here that the Objector-Appellant is engaged in an unabashed attempt to disrupt the Settlement, and "to simply extract a fee by lodging generic,

unhelpful protests." *Devlin v. Scardelletti*, 536 U.S. 1, 23, n.5, (2002) (Scalia, J., dissenting) (citing *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973-74 and n.18 (E.D. Tex. 2000)).  By pursuing their intended appeals, the Objector and his counsel seek to hold hostage the significant settlement proceeds to be distributed to the Settlement Class.  Accordingly, it is appropriate for the Court to impose an appeal bond of $30,000.

### A.    Requiring the Objector to Post an Appeal Bond as a Condition to Prosecuting His Appeal Is Appropriate

The Federal Rules of Appellate Procedure empower district courts to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  Fed. R. App. P. 7.  The Court therefore retains jurisdiction "during the pendency of an appeal" to order Rule 7 bonds.  *See Venen v. Sweet*, 758 F.2d 117, 120-21, n.2 (3d Cir. 1985).  The purpose of Rule 7 is to protect an appellee against the risk of non-payment by an unsuccessful appellant.  *See Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) (citation omitted).  The questions of the need for a bond as well as its amount are left to the discretion of the trial court.  *See* Fed. R. App. P. 7, 1979 advisory committee notes.  "A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal."  *Adsani*, 139 F.3d at 79 (citation omitted).

District courts in this Circuit addressing the necessity of an appeal bond in class action cases have focused not on whether a bond should be required, but rather on the amount of the bond.  *See In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 164-67 (E.D. Pa. 2010) (ordering $25,000 cost bond for appeal of class action settlement); *In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04-5184 (GEB), 2007 WL 1963063 (D.N.J. July 2, 2007) (same); *In re Diet Drugs Products Liab. Litig.*, MDL No. 1203, 2000 WL 1665134 (E.D. Pa. Nov. 6, 2000) (same).  The court in *In re Insurance Brokerage* recognized that in the class action context an appeal bond is

"necessary to provide some level of security to Lead Plaintiffs who have no assurances that Appellants have the ability to pay the costs and fees associated with opposing their appeals." *In re Ins. Brokerage*, 2007 WL 1963063, at \*2 (citation omitted); *see also Allapattah Servs., Inc.* 2006 WL 1132371, at \*18 (imposing appeal bond on class member appealing settlement on behalf of entire class when impact of appeal would be "highly detrimental" as it would stay "both the entry of final judgment on all claims [] and payment to all Class members.").

Costs on appeal include those costs itemized in Rule 39 of the Federal Rules of Appellate Procedure, such as the costs to prepare and reproduce the briefs and appendices. An appeal bond under Rule 7 may include attorneys' fees and administrative costs where the award of such fees is authorized by statute. In this case, Rule 38 of the Federal Rules of Appellate Procedure further provides the basis for an appeal bond because the appeal is frivolous. Specifically, Rule 38 provides as follows:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Fed. R. App. P. 38.

"Damages" in such a case may include both reasonable attorneys' fees and administrative costs occasioned by the delay. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.,* No. MDL 1361, 2003 WL 22417252, at \*3 (D. Me. Oct. 7, 2003)(damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond); *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278, Corrected Order No, 82 (E.D. Mich. Dec. 18, 2003) (attorney fees are also properly included as costs in the request Rule 7 appeal bond."), *aff'd*, 391 F.3d 812 (6th Cir. 2004); *Maher v. Hyde*, 272 F.3d 83, 87 (1st Cir. 2001) (The purpose of Rule 38 penalties "is to discourage litigants from wasting the time and monetary resources of both their

opponents and the nation's judicial system with legal arguments that do not merit consideration.") (citation omitted).

Where a district court believes that the recovery of fees and sanctions is possible under Rule 38, such amounts should be considered in the assessment of an appeal bond.  In *Sckolnick v. Harlow*, the First Circuit ruled that a bond for sanctions that might be awarded under Rule 38 of the Federal Rules of Appellate Procedure may be appropriate.

> [T]he district court's decision to set the amount at $5,000 implied a view that the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility. . . .  We note, also, that the defendants introduced evidence below that a plaintiff is a litigious pro se who has filed numerous lawsuits in state court.

820 F.2d 13, 15 (1st Cir. 1987).  Similarly, in *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, *3 (D. Me. Oct. 7, 2003), the district court addressed the propriety of an appeal bond that included both attorneys' fees and additional costs in the context of a frivolous appeal.  There the court found that the appeal "might be frivolous" and that an award of sanctions on appeal pursuant to Rule 38 was "a real probability."  It therefore concluded under those circumstances that a bond for "damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond."  *Id.*  The court believed the probability of sanctions being awarded under Rule 38 was high enough to justify consideration of that fact for purposes of calculating the appropriate appeal bond.

Finally, pursuant to Rule 38, the bond may also cover costs taxable on appeal as addressed in Rule 39.  *See O'Keefe v. Mercedes-Benz USA, LLC*, No. Civ. A. 01-CV-2902, 2003 WL 22097451 (E.D. Pa. June 4, 2003) (ordering $13,467 appeal bond), and may be doubled pursuant to Rule 38.

**B.**       **A Bond of $30,000 is Necessary to Cover the Costs of the Appeal**

"[T]he nature and amount of the bond is a matter left to the sound discretion of the district court." *Sckolnick*, 820 F.2d at; *see also Adsani,* 139 F.3d at 79 ("A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal."). Importantly, however, the appeal bond should be sufficient to cover and secure the costs of the appeal. *See In re Wal-Mart Wage & Hour Employment Practices Litig.*, 2010 WL 786513, at *2. The Supreme Court defines "costs" to "refer to all costs properly awardable under the relevant substantive statute or other authority." *Marek v. Chesny*, 473 U.S. 1, 9 (1985). District courts in the Third Circuit have imposed substantial appeal bonds on appealing objectors in class action cases **without any showing** as to the actual costs to be incurred. *See, e.g.*, *In re Am. Investors Life Ins. Co.*, 695 F. Supp. 2d at 167 (ordering $25,000 cost bond for appeal of class action settlement); *In re Ins. Brokerage*, 2007 WL 1963063, at *3 (same); *In re Diet Drugs*, 2000 WL 1665134, at *6-*7 (finding $25,000 as a reasonable estimate and ordering that "Objectors shall be jointly and severally responsible for posting a $25,000.00 bond to ensure payment of costs incurred by the class on appeal should the class prevail"). Plaintiff seeks three categories of allowable costs: (1) the direct costs related to the appeal; (2) the additional costs associated with administration of the Settlement caused by the delay in disbursement of the settlement fund to the Class; and (3) attorneys' fees related to the appeal. Thus, $30,000 is a **more than** reasonable estimate of such costs. *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *5 (D. Minn. Sept. 11, 2012) ("The $20,000 bond requested by the Settlement Class for costs incurred by delay are reasonable and necessary. The costs of additional administration should be shouldered by the Objectors, particularly given the tenuous nature of their arguments."); *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012) ("the Court finds good cause to impose an appeal bond in the amount of $60,000,

which represents solely the appellate costs and administrative costs requested by Plaintiff"); *In re Checking Account Overdraft Litig.*, No. 1.09-MD-02036 JLK, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012) (ordering a bond in excess of $616,000 because the appeal "prevent[ed] distribution of the Settlement proceeds as ordered by this Court's Final Judgment"); *In re Wal-Mart*, 2010 WL 786513, at *1-*2 (each of four objectors appealing from final approval of class action settlement required to post $500,000 bond in light of administrative costs and interest the class would lose as a result of the delay in compensation and injunctive relief due under the settlement agreement); *In re Pharm. Indus.*, 520 F. Supp. 2d at 279 (appealing objector required to post $61,000 bond for administrative costs that class will suffer as a result of delay in distribution from class action settlement); *In re Cardizem*, 391 F.3d at 815 (affirming imposition of bond that include $123,429 in the appeal bond amount for "incremental administration costs" due to a projected six-month delay); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252, at *1-*2 (D. Me. Oct. 7, 2003) (concluding that costs of delay or disruption of settlement may be included in a Rule 7 bond and granting $35,000 appeal bond).   Courts treat with particular disapproval the objections and appeals of "professional objectors," whose objections amount to a "tax that has no benefit to anyone other than to the objectors" but serves to "tie up the execution of [a] Settlement and further delay payment to the members of the Settlement Class...."  *In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *2.

Plaintiff also will incur increased administrative expenses from the delay caused by the Objector's appeal, which would include, among other expenses, additional costs necessary to extend website maintenance and to process and respond to written and verbal inquiries about the status of claims processing during the appeal.  Plaintiff estimates the appeal could take up to 24 months to resolve based on the length of time from the filing of the notice of appeal and the final disposition in two recent class action cases where objectors appealed to the Third Circuit.  In *Dewey v. Volkswagen AG*, decided May 31, 2012, *see* 681 F.3d 170 (3d Cir. 2012), the objectors filed their

notices of appeal 21 months earlier on August 20, 2010. *See Dewey v. Volkswagen AG*, No. 07-cv-2249-FSH-PS (D.N.J.), ECF No. 268. And, in *Larson v. AT & T Mobility LLC*, decided June 29, 2012, *see* 687 F.3d 109 (3d Cir. 2012), the objectors filed their notices of appeal more than 19 months earlier on February 12, 2010. *See Sampang v. AT & T Mobility LLC*, No. 07cv5325-JLL (D.N.J.), ECF No. 461. Thus, Plaintiff believes that $30,000 is a ***more than reasonable*** estimate of the costs to be incurred during the pendency of the appeal and for which Plaintiff is entitled to security in the present circumstances.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an Order, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, requiring the Objector-Appellants to collectively post a bond of $30,000 within 10 business days and requiring them to post the appeal bond before proceeding with their appeal, and any other relief the Court deems just and proper.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
*Attorneys for Plaintiff Edward Rossi and the Class*


By:____/s/ James E. Cecchi_____
JAMES E. CECCHI

Dated: January 22, 2014

Of Counsel:

Scott A. Bursor
Joseph I. Marchese
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
(646) 837-7150

Antonio Vozzolo
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 983-9330
*Attorneys for Plaintiff Edward Rossi and the Class*